(Muskingum County Common Pleas.)

PARAGON OIL CO. v. WILLIAM K. FAMILTON.

---

A contract requiring an employe not to enter the service of a rival within one year after leaving an employer, no matter for what cause he quits, or is discharged, is oppressive, and unjust, and injunction will not be granted to enforce it against the employe.

---

MUNSON, J.

The petition alleges, that defendant contracted in writing with plaintiff, Oc-tober 1, 1896, that in consideration of being employed by plaintiff, and payment of $1.00 per day, or other consideration, he would not for a year after leaving plaintiff's service for any cause, do anything within the city of Zanesville, in the line of selling and delivering oil or gasoline at the houses of consumers, by horse and wagon, or otherwise—neither in his own name, nor in connection with any partnership or corporation, nor as the agent of any other person, partnership or corporation, nor in any wise, that would interfere with, compete with, or work against the profit or advantage, or business of plaintiff. * * *. And would not accept employment directly, or indirectly, solicit or receive, or fill orders in any capacity whatever, for any oil or gasoline to be sold direct to, or delivered at the houses of consumers by wagon or other conveyance, for the year after leaving plaintiff's employment for any cause. And would not aid, countenance, promote nor encourage, the business of any competitor of plaintiff, its successors or assigns, within the city of Zanesville, for a year after leaving plaintiff's employment for any cause.

That plaintiff did employ defendant under that contract, and he began to work for plaintiff, selling oil and gasoline until September 25, 1897, when he left plaintiff, and began, and still continues to sell gasoline in Zanesville, to consumers, in violation of his contract.

Defendant's employment by plaintiff, it is alleged, gives him knowledge of the business affairs and methods of plaintiff, and an acquaintance with, and knowledge of the customers of plaintiff, which he can now use so as to benefit a rival of plaintiff, and seriously injure it, and is now so using his peculiar knowledge and skill so acquired in competition with plaintiff, and threatens to, and will, unless restrained by the court, continue to carry on the same to the great and irreparable injury of plaintiff; and that such acts in violation of the contract are a continuing injury to, and an interference with plaintiff's business, and prevents its establishment, and greatly reduces its profits. And plaintiff cannot be fully compensated in damages; and defendant is wholly irresponsible financially, without property that can be reached by process of law, and an action at law would be useless and vain, and wholly inadequate to compensate for damages and injuries to plaintiff, resulting from the violation of the contract.

Plaintiff asks the court to enjoin defendant from carrying on said business in Zanesville, either in his own name, or in the name of any other person, or persons, and from endeavoring to induce any person or persons, who are customers of defendant, to cease or abstain from buying oil or gasoline from plaintiff, or its successors, or assigns, and from

doing any and all other acts in violation of said contract, and for such other and further relief, as is just and equitable.

The answer of defendant admits that he signed the contract; that he was engaged in selling oil and gasoline in Zanesville to consumers, from October 1, 1896, to September 25, 1897, and since has continued to sell for another company than plaintiff; admits that defendant has acquired an acquaintance with, and knowledge of customers who had purchased oil of plaintiff; that defendant has no property subject to execution; but denies each and every other allegation of the petition; and avers that a week before leaving plaintiff's employment, he notified his employer of his intention to leave said employment, and during the week following, took the man employed to take his place in such employment, over the route in Zanesville, where he had theretofore sold oil and gasoline, and showed him every customer, and told the customer that this was the man who would succeed him in the employment; and gave his successor all bills and papers in his possession pertaining to the business, which included the names of all of the customers; and advised the customers that he had ceased said employment, and that another had taken his place, and would be to see them; that the defendant is largely engaged in selling an oil different from that sold by him, before September 25, 1897, and largely to new and different customers; that said employment does not require any great or special skill and knowledge; that the services are not peculiar or extraordinary in character; and that since September 25, 1897, plaintiff has been aware of defendant's present employment and its character.

The reply denies that defendant is now largely engaged in selling an oil different from that sold by him before September 25, 1897, or largely to new or different customers. It denies that the employment does not require special skill or knowledge, and that the services are not peculiar or extraordinary in character, and denies that it has, since September 25, 1897, been aware of the character of defendant's employment.

The case was heard on evidence, and I find the facts to be, that defendant did make the contract and enter the employment of plaintiff as alleged, and did before the expiration of the time agreed upon, quit the employment of plaintiff as alleged, and against plaintiff's wish that he remain. That he did acquire knowledge not only of the customers of plaintiff, but of the business, which required acquaintance with the various grades, and qualities and prices of oil and gasoline sold; and also, acquaintance with the knack of burning the oil and gasoline in lamps so as to prevent the smoking of lamp chimneys;

that the employment is peculiar and special, but does not require special or extraordinary ability, but only ordinary ability to acquire; that the knowledge of character, and grades, and prices, of oil, is easily acquired by a man of ordinary mind and attainments; and, the fixing of lamp chimneys so that they will not smoke when burning the oil or gasoline sold, is not an art, requiring expert management, but a "knack" requiring some readiness and dexterity perhaps, but not more than is possessed by men of ordinary intelligence, and having ordinary use of eyes, hands, and fingers.

I also find, that the knowledge of the business acquired by defendant while in plaintiff's employment, was not acquired confidentially, or in confidence, and that no secrets of business were imparted to him or betrayed by him; that he did notify plaintiff that he was going to leave, and did show the man designated by plaintiff to succeed him, the route and customers, and turned over books and papers to his employer as alleged; but that the oil or gasoline he now sells, is not substantially different from that sold for plaintiff by him, and that he is now working for a rival company of plaintiff, selling illuminating oil, substantially the same.

I also find from the evidence, that many of the customers of plaintiff, ceased to be its customers after defendant left its employment; that the man who took his place in the route, had gathered up new customers, but had not at the date of this trial, leveled up the business; that the new man's sales were less (at the time of this hearing) than defendant's, by 100 to 125 gallons a week. Whether defendant could have held his customers for any particular length of time, or whether the new man would equal him, or surpass him, in customers in time, does not appear. Defendant began the work for the rival company, September 25, 1897; the hearing of the case was on October 14, 1897.

The question whether or not a court of equity will grant its aid, must depend upon the circumstances of each particular case. And in this case the question is narrowed under the pleadings and evidence, to this:

Ought the court to interfere to aid the employer where the contract sought to be enforced, permits it to discharge the employe at any time, for any reason, and yet continue its control over him, (to the extent of preventing him working for a rival company in Zanesville), for one year after such discharge?

The question is narrowed to this, because the evidence shows defendant has done all he could do to prevent injury to plaintiff, resulting from his quitting its employ, save and except working for its rival. He has done what he could do to

turn over to the plaintiff the route he established, and the customers he had gained while working for it. If he had not done that, the case might not turn, as I think it does, in the consideration of the contract of the employment itself, and the application of those equitable principles which should govern such a contract.

Consider this contract of employment. It permits the employer to discharge the employe, "for whatever reason at any time," and still continues control over his working in one of the ways he might otherwise work for a full year's time after such discharge.

Is that fair? Is it not oppressive? Cannot a stipulation be devised that will afford the necessary protection to plaintiff's business and at the same time restrain defendant less?

If the contract had provided that only if Famiiton left his employment he should be so controlled and restrained, or was discharged for cause, all reasonable, necessary protection to plaintiff's business would have been afforded, and Famiiton been much less restrained.

Famiiton would then have encouragement to be, and continue efficient and faithful; and the Paragon Oil Company would be constrained only to continue him in its employment till the end of the time contracted for, (long or short); or, if choosing to discharge him without cause, forego all control over him after discharge. This contract not only permits discharge "for whatever reason" at any time—however well Famiiton found himself adapted to the business, however well he pleased customers and the company—but holds on to him a year after such unjust, uncalled for, discharge.

It is said, "If the company had unreasonably exercised that legal power, no court of equity would grant it an injunction;" and that "such an unreasonable discharge would be held satisfactory evidence that the contract was not made in good faith for the protection of the companys business."

But does that answer the objection that nevertheless the "legal power" to act in such an unreasonable manner, to make such an unreasonable discharge, is a part of the contract itself; is embodied in the very contract which this action is brought to have the court specifically enforce. And the question remains: Does not the embodying of such "legal power," a power that may be exercised unreasonably under sanction of the very contract itself, so taint the entire contract that equitable aid ought not to be given to its specific performance.

Plaintiff's legal right to damages because of defendant's working for the rival company, is unquestioned. Plaintiff may obtain its judgment against defendant and hold it over him for his life-

time. That legal right is clear enough under the contract. But would it not be harsh and unreasonable to stop him from his work in addition? It is familiar, equitable doctrine, that "equity will not aid in the harsh assertion of a legal right." The contract permits the same restraint on defendant if he is turned off without cause, as if he left of his own volition.

This seems to be unfair and oppressive. It more tnan fairly protects the interests of plaintiff; and in that respect is not alone harsh and unreasonable upon defendant, but interferes with the interests of the public by making it possible (if this contract may have equitable aid), for an employer under cover of such a contract as this, to deprive a laborer of the opportunity of earning his living in his chosen way for a year, without sufficient cause.

Under this contract there is no room to imply anything. It is an express contract. It is express that for "whatever cause" defendant quit service he may be restrained; so that I think it cannot be maintained that the cause of his dismissal from service must be a just and reasonable cause. The sufficiency of the reason is left to plaintiff, under the terms of the contract.

The fact that plaintiff did not discharge defendant, is, I think, immaterial to the question: Shall the negative portion of this contract be enforced by prohibitory injunction? The contract itself, and the contract alone, must be looked to to determine, if by its terms it is fair or oppressive. If, looking to the contract alone, it appears that it gives power which may be exercised to oppress unreasonably, equity will not lend its aid to enforce such contract, although the part which is oppressive and unreasonable, has never in fact been so exercised. It is enough if the contract is bad in that respect.

Another reason why this injunction ought not to be granted, is the slight good it will do plaintiff in comparison with the injury that it will do defendant. The evidence shows that Norman is gaining new customers; he has taken the route quite recently; there is no evidence leading to the belief that he will not continue to gain business; if so, plaintiff will lose nothing so far as a change of drivers can affect its business. On the other hand, defendant would be, for a time at least—until he gets other work—without the means to labor for the support of himself and family.

In Sternberg v. O'Brien, 48 N. J. Eq., 370; Judge Baldwin gives that as a reason why an injunction should "never be granted." He says: "The rule is fundamental that an injunction should never be granted when it will operate oppressively or contrary, to the real justice of the case, or when it is not the fit or ap-

propriate method of redress under the circumstances of the case—or when the benefit it will do the complainant, is slight in comparison to the injury it will do the defendant. The great office of the writ is to protect and preserve—not to destroy."

Now, when we recall the evidence which is uncontradicted—that defendant notified plaintiff of his intention to quit its service, and that he thereafter showed the new man over the route, calling on each customer, telling them: —"this is the new man who is to take my place," and turned over his list of names of customers and books of accounts; that the new man has already gained new customers, and is within 100 to 125 gallons per week of leveling up the business of the route; and that the only injury really to be complained of, is defendant's working for the rival company—the injury that could do to plaintiff, seems trivial to that of depriving defendant of the opportunity of earning his livelihood in working for the rival company.

The evidence does not establish that he took with him to the rival concern, any secrets of the business of plaintiff; that he ever had any confidential relations with plaintiff which he betrayed to the rival company. If the evidence had shown either, a different case would be presented. He had nothing to disclose but what he did disclose and turn over to the new man for the plaintiff's benefit.

All he took to the rival company was his knowledge gained of the business, which he could not return to plaintiff, and his use of head and hands in the new employment. In Mandeville v. Harman, 42 N. J. Eq., 185, the court says: "It is one of the natural rights of every citizen of this state, to use his skill and labor in any useful employment, not only to get food and raiment and shelter, but to acquire property, and I think it may be regarded as very certain, that the courts will never deprive any one of this right, or even abridge it, except in obedience to the sternest demands of justice."

I do not think the demands of justice require me to enjoin defendant from laboring for plaintiff rival company, and the writ is refused.

Nash & Lentz, and L. G. Addison, of Columbus, with Granger and Granger of Zanesville, Attorneys for The Paragon Oil Co.

Durban & McDermott, for the defendant.